UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID BRAY,

                              Plaintiff,

        -v-

PURPLE EAGLE ENTERTAINMENT, INC. and
RICHARD MGRDECHIAN,

                              Defendants.

CIVIL ACTION NO. 18 Civ. 5205 (GBD) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE GEORGE B. DANIELS**, United States District Judge:

## I.    INTRODUCTION

On June 10, 2018, Plaintiff David Bray ("Mr. Bray") commenced this action against Defendants Purple Eagle Entertainment, Inc. ("Purple Eagle") and Richard Mgrdechian,[1] the former owner of Purple Eagle ("Mr. Mgrdechian," with Purple Eagle, "Defendants") alleging that Defendants failed to adequately compensate Mr. Bray for his contributions to the musical group "Madison Rising," which Defendants owned and managed.  (ECF No. 1 (the "Original Complaint"); see ECF No. 51 (the "SAC")).  In the SAC, Mr. Bray seeks money damages for unjust enrichment and for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, et seq., declaratory relief, and the imposition of a constructive trust.  (Id. ¶¶ 91–161).

On March 21, 2023, after Defendants failed to defend against Mr. Bray's claims and respond to the Court's instructions, the Honorable George B. Daniels ordered that default

---

[1] Mr. Mgrdechian passed away in or about August 2020, and a Suggestion of Death was filed on May 23, 2021.  (ECF No. 136).

judgment be entered in Mr. Bray's favor against Defendants (ECF No. 163 (the "Default Order"))
and referred the matter for an inquest on damages. (ECF No. 164). Based on Mr. Bray's
unopposed motion for default judgment (ECF Nos. 159; 160 (the "Supporting Declaration")) and
unopposed damages submission (ECF No. 166 (the "Damages Submission")), the Court
respectfully recommends that:

1. Mr. Bray be declared the owner of copyrights in recordings of "Amazing
   America" (CR Registration # PA 2-139-608), "Soldier's Christmas" (CR
   Registration # PAu 3-380-536), "The Marine's Hymn" (CR Registration #
   2-139-600), and "God Bless America" (CR Registration # PA 2-139-604);

2. Mr. Bray be awarded:

   a. Actual damages for copyright infringement under the Copyright Act
      in the amount of $11,315.81;

   b. Postjudgment interest pursuant to 28 U.S.C. § 1961; and

   c. Costs in the amount of $400.00; and

3. All Mr. Bray's other claims for damages and other relief be DISMISSED WITH
   PREJUDICE.

## II.    BACKGROUND

### A.  Factual Background

Unless otherwise indicated, the facts are taken from the SAC, Supporting Declaration, and
Damages Submission. (ECF Nos. 51; 160; 166). Given Defendants' default, the Court accepts as
true all well-pleaded factual allegations in the SAC, except as to damages. See City of New York
v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("[i]t is an 'ancient common law

axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint") (quoting <u>Vt. Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 246 (2d Cir. 2004)); <u>Alm v. Spence</u>, No. 19 Civ. 4005 (GBD) (RWL), 2023 WL 3967790, at *2 (S.D.N.Y. June 13, 2023).[2]

Mr. Mgrdechian was the founder and Chief Executive Officer ("CEO") of Purple Eagle, a New York corporation that produced music. (ECF No. 51 ¶¶ 2, 18–19). Mr. Bray is a professional musician. (<u>Id.</u> ¶ 17). On May 31, 2011, Mr. Bray and Mr. Mgrdechian entered into the Band Member Agreement (ECF No. 51-1 (the "Agreement")), under which Mr. Bray agreed to join Defendants' band. (<u>Id.</u>; <u>see</u> ECF No. 51 ¶ 31). The Agreement provided that Mr. Bray would work for Purple Eagle "as a work-for-hire . . . band member in recording and performing (the 'Obligations') the music, songs and lyrics (the 'Material') as provided to [him] by [Purple Eagle]." (ECF No. 51-1 ¶ 1). With respect to the ownership of any Material created under the Agreement, the Agreement provided that:

> Except as otherwise provided in this Agreement or at law:
>
> a) the Obligations and the Material shall be a work-for-hire, and [Purple Eagle] shall own the Material, and shall be the sole and exclusive owner of the copyright in the Material, including all rights of copyright registration, renewal and extension;
>
> b) [Purple Eagle] (or an assignee of [Purple Eagle]) shall also be considered to be the author of the Material for the purposes of U.S. copyright law, and for the purposes of any other applicable state or federal laws;
>
> c) [Mr. Bray] shall make no claim to ownership of the copyright in the Material unless expressly agreed to otherwise by [Purple Eagle] in writing or as set forth herein, nor shall [Mr. Bray] attempt to exercise any rights, privileges or protections afforded to a copyright holder; and

---

[2] Unless otherwise indicated, all internal citations and quotation marks are omitted from case citations.

d) [Mr. Bray] waives all moral rights in the Material.

Subject to paragraph 6 below, [Mr. Bray] understands that all material prepared, written, and/or created by [him], or contributed to the Material by [him,] shall be on a work-for-hire basis as that term is defined under U.S. copyright law and shall belong solely to [Purple Eagle]. In the event any such contribution or material is not considered a work-made-for-hire, [Mr. Bray] hereby irrevocably assigns to [Purple Eagle] all of [his] right, title and interest in such Material.

(ECF No. 51-1 ¶ 2). Paragraph 6 of the Agreement further provided that:

in the event that [Mr. Bray] contributes materially to the authorship of any of the Material, [Mr. Bray] shall receive writers' credit and royalties in conjunction with all other co-author[]s of such Material per the terms of this Agreement, other third party agreements and pursuant to the music industry standards. [Mr. Bray] acknowledges and agrees that [he] shall contribute if and only when request[ed] by [Purple Eagle], and then [he] shall only contribute at his reasonable discretion.

(Id. ¶ 6). The Agreement specified a three-year term (the "Term"), with the option for the parties "to mutually agree, in good faith, to extend the [Term] for an additional three (3) year period upon payment of a mutually agreed to extension fee to [Mr. Bray] not to exceed $25,000." (Id. ¶ 3).

On October 17, 2011, the band, under the new name "Madison Rising" (the "Band") released its debut album with the same name (the "First Album"). (ECF No. 51 ¶¶ 36–37). Mr. Bray provided creative input for four of the songs on the Album: "Soldiers of America," "Hallowed Ground," "Before the Hyphens Came," and "Right to Bear." (Id. ¶ 40). Mr. Bray received writers' credit for his contributions to the four songs but did not receive any royalties under the Agreement. (Id.) On March 11, 2012, the Band performed Mr. Bray's adaptation of "The Star-Spangled Banner," which the Band then recorded on April 20, 2012. (Id. ¶¶ 49, 52). Mr. Mgrdechian hired a videographer to prepare a music video to accompany the release of "The Star-Spangled Banner" on YouTube on May 24, 2012. (Id. ¶¶ 53–54).

On November 5, 2013, the Band released its second album, "American Hero" (the "Second Album"), which consisted of original songs Mr. Bray composed and Mr. Bray's adaptation of "America the Beautiful." (ECF No. 51 ¶ 56). Defendants did not request that Mr. Bray provide material for the Second Album, but Mr. Bray did so anyway and "offered that the [B]and could use it," including for live performances. (Id. ¶ 55). Mr. Bray had the "expectation that he would paid accordingly" for his creative contributions to the Second Album. (Id.) On June 15, 2015, the Band released "American Hero (Red)" (the "Third Album"), a remastered version of the Second Album. (Id. ¶ 60). The Third Album contained all but one of the songs from the Second Album, plus two new songs by Mr. Bray and "rock versions" of "The Marine['s] Hymn" and "God Bless America." (Id.) Purple Eagle did not reimburse Mr. Bray for recording costs, pay Mr. Bray royalties for his contributions to the Second Album—including the remastered version—or pay Mr. Bray for designing the album artwork. (Id. ¶¶ 61–63).

In May 2014, when the Term was about to expire, Mr. Mgrdechian declined to extend the Term. (ECF No. 51 ¶ 68). Instead, Mr. Mgrdechian told Mr. Bray that "they did not need a new or extended contract because, with all of the valuable contributions Mr. Bray had made, they would continue without a contract and were 'basically partners.'" (Id. ¶ 71). Mr. Mgrdechian told Mr. Bray that he would issue stock certificates granting Mr. Bray partial ownership in Purple Eagle, but never did so. (Id.) Throughout the "partnership" between Mr. Bray and Mr. Mgrdechian, Mr. Bray's salary and expenses were "always" paid between one and four months late. (Id. ¶ 72). In January 2016, Mr. Bray requested from Mr. Mgrdechian payment of his unpaid wages and time off for March 4–15, 2016 to travel overseas. (Id. ¶ 76). Although Mr. Mgrdechian approved the requests, on February 29, 2016, a few days before Mr. Bray was scheduled to leave

the country, Mr. Mgrdechian suspended Mr. Bray for 30 days for "alleged behavioral issues." (Id. ¶ 77). On the same day, Mr. Mgrdechian presented Mr. Bray with a new contract that he had seven days to sign. (Id. ¶ 78). When Mr. Bray refused to sign the new contract, Mr. Mgrdechian "terminated the relationship." (Id.)

Mr. Bray asserts that the United States Copyright Office has issued registration certificates "evidencing Plaintiff's copyright interests to [17] songs": "Soldier's Christmas," "Warrior Inside," "Last Call," "Amazing Grace/Taps," "Ready If It Goes There," "Amazing America," "Hallowed Ground II," "Reflection PTSD," "Something Wicked," "Open Road," "Lock N' Load," "Hero," "Come to the Ready," "America the Beautiful," "God Bless America," "The Marine's Hymn," and "Star-Spangled Banner." (ECF No. 51 ¶ 114 (the "Registered Songs")). Mr. Bray does not allege when these registration certificates were issued. (Id.) Mr. Bray claims that, on several occasions between 2014–2017, some occurring after he left the Band, Defendants infringed his copyright interests by licensing some of the Registered Songs and uploading them to the internet for purchase and streaming. (Id. ¶¶ 116–36). Of the Registered Songs, four were included on the Third Album, which was released after the expiration of the Term: "Amazing America," "Soldier's Christmas," "The Marine's Hymn," and "God Bless America." (Id. ¶ 60 (the "Post-Term Songs")). For "Amazing America" and "Soldier's Christmas," Mr. Bray holds a copyright interest in "composition and sound recording," and as a "co-author" of the compositions. (Id. ¶ 92). For Mr. Bray's arrangements of "The Marine's Hymn" and "God Bless America," which are "public domain musical compositions," Mr. Bray's claimed copyright interest is in the nature of "derivative musical compositions." (Id. ¶ 95).

B. **Procedural Background**

On June 10, 2018, Mr. Bray filed the Original Complaint, asserting causes of action for "Declaratory Relief" (the "Declaratory Judgment Claim"), "Copyright Infringement" (the "Copyright Claims"), "Accounting" (the "Accounting Claim"), "Unjust Enrichment" (the "Unjust Enrichment Claim"), and "Constructive Trust" (the "Constructive Trust Claim"). (ECF No. 1 ¶¶ 112–47). On August 3, 2018, Mr. Bray filed a First Amended Complaint, asserting the same causes of action. (ECF No. 19 (the "FAC") ¶¶ 115–54). On August 14, 2018, Defendants moved to dismiss the FAC under, inter alia, Federal Rule of Civil Procedure 12(b)(6). (ECF No. 21 (the "MTD")). On January 18, 2019, the Honorable Henry B. Pitman issued a Report and Recommendation recommending, inter alia, that the MTD be granted as to the Copyright Claims with leave to replead. (ECF No. 44 (the "R&R")). Bray v. Purple Eagle Enter., Inc., No. 18 Civ. 5205 (GBD) (HBP), 2019 WL 1549044, at *1, 11 (S.D.N.Y. Jan. 18, 2019) ("Bray I"), adopted by, 2019 WL 549137 (S.D.N.Y. Feb. 12, 2019) ("Bray II"). Judge Pitman found that the Copyright Claims were deficient because the FAC "failed to allege any specific conduct by defendants that constitute[d] copyright infringement." Id. at *7. Judge Pitman also recommended denying "plaintiff's claims for declaratory relief, accounting, unjust enrichment, and constructive trust [] because they are all based on plaintiff's copyright infringement claim. As currently pled, these claims merely seek different remedies for the same alleged wrong." Id. at *8. Given the recommendation that the remaining claims be dismissed, Judge Pitman did "not address defendants' argument that these claims are preempted by the Copyright Act." Id. at *8 n.4. On February 12, 2019, Judge Daniels adopted the R&R in its entirety. (ECF No. 47). Bray II, 2019 WL 549137, at *1, 4.

On March 21, 2019, Mr. Bray filed the SAC.  (ECF No. 51).  Although the SAC contained the same causes of action as the FAC, in support of the Copyright Claims, the SAC added allegations of specific instances of Defendants' alleged copyright infringement.  (See id. ¶¶ 116–36).  On September 5, 2019, Defendants filed an answer to the SAC.  (ECF No. 73).

On May 23, 2021, Defendants filed a Suggestion of Death as to Mr. Mgrdechian, asserting that Mr. Mgrdechian had died "on or about August 7, 2020."  (ECF No. 136).  On the same day, Defendants' counsel moved to withdraw, asserting that "[t]he only heirs to [Mr.] Mgrdechian's company and assets do not want to be involved [] in the affairs of the corporation by any means. They do not want to proceed with any legal proceedings.  The corporation has essentially been abandoned by [Mr. Mgrdechian], now deceased, and by his family and associates."  (ECF No. 137).  On July 6, 2021, Defendants having manifested their unwillingness to defend themselves in the case, the Court ordered Mr. Bray to initiate default proceedings.  (ECF No. 139).  On July 14, 2021, although no certificate of default had yet been entered, Mr. Bray moved for a default judgment (ECF No. 140–42), which the Court denied without prejudice, finding that his "barebones submission—which is entirely lacking evidentiary support or a memorandum of law—does not include sufficient evidence for the Court's review."  (ECF No. 143).

On November 9, 2022, after the Court had permitted Mr. Bray time to obtain certain documents via third-party subpoenas (ECF Nos. 143–45), the Clerk of Court entered a Certificate of Default as to Defendants.  (ECF No. 158).  On November 14, 2022, Mr. Bray again moved for default judgment, and served the motion and Supporting Declaration on Defendants.  (ECF Nos. 159–60; 62 (the "Motion")).  As evidence of his damages, Mr. Bray attached to the Supporting Declaration an "Accounting Spreadsheet" from "CD Baby," the "primary distribution channel" for

the Band's music.  (ECF No. 160 ¶ 22 & n.2; ECF No. 160-1 (the "Spreadsheet")).  Mr. Bray requested $323,225.53 in damages (the "Requested Damages"), plus interest, in addition to other relief.  (ECF Nos. 159-1 ¶ 1; 160 ¶¶ 22–23).  On March 21, 2023, Judge Daniels issued the Default Order granting the Motion and referred the matter for an inquest on damages.  (ECF Nos. 163–64).

On March 22, 2023, the Court issued an Order permitting Mr. Bray to supplement his prior submission "with any additional support concerning his alleged damages," and warning Defendants that, if they did not respond to Plaintiff's submissions, the Court would "issue a Report and Recommendation concerning damages based on Plaintiff's written submissions alone without an in-Court hearing."  (ECF No. 165 (the "Scheduling Order")).  On April 26, 2023, Mr. Bray filed the Damages Submission, stating that "[w]e do not have any further factual information to submit" and that he was not seeking attorneys' fees, but seeking costs of $400.00.  (ECF No. 166).  To date, Defendants have not responded to the Scheduling Order or otherwise contacted the Court.

### III.    LEGAL STANDARDS

#### A.    Obtaining a Default Judgment

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55.  See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015) (per curiam).  First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default.  See Fed. R. Civ. P. 55(a).  Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment.

See Fed. R. Civ. P. 55(b). Whether to enter a default judgment lies in the "sound discretion" of the trial court. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) (per curiam), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other." Lopez v. Emerald Staffing, Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default." First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011). "These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense." J & J Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp., No. 13 Civ. 4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Aug. 12, 2014), adopted by, 2014 WL 4467774, at *1 (E.D.N.Y. Sept. 9, 2014) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)); see Enron, 10 F.3d at 96 (noting that "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment [] because the concepts of finality and litigation repose are more deeply implicated in the latter action").

**B. Determining Liability**

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default

"only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). The Court must determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law." Id. If the Court finds that the well-pleaded allegations establish liability, the Court then analyzes "whether plaintiff has provided adequate support for the relief [he] seeks." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information." Lopez, 2020 WL 915821, at *4.

### C.  Determining Damages

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Getty Images (US) Inc. v. Advernet, Inc., 797 F. Supp. 2d 399, 411 (S.D.N.Y. 2011) (citing Credit Lyonnais Sec. (USA) v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Lopez, 2020 WL 915821, at *4. The evidence the plaintiff submits must be admissible. See Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see also House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on admissible evidence."). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an

evidentiary hearing.  <u>Fustok v. ContiCommodity Servs. Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989); <u>see</u> <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment").

### IV.    <u>DISCUSSION</u>

#### A.  <u>Default Judgment</u>

In accordance with the two-step process in Rule 55, the Clerk of the Court entered a Certificate of Default as to both Defendants (ECF No. 158), and Judge Daniels entered the Default Order.  (ECF No. 163).  Furthermore, an analysis of the relevant factors set forth above reveals first that the Court can infer, from Defendants' failure to respond to Mr. Bray's Damages Submission, after having been properly served, that their default was willful.  <u>See</u> <u>Indymac Bank,</u> <u>F.S.B. v. Nat'l Settlement Agency, Inc.</u>, No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that a failure to respond to a complaint and subsequent motion for default judgment "indicate[s] willful conduct").  Second, delaying entry of a default judgment might prejudice Mr. Bray, "as there are no additional steps available to secure relief in this Court." <u>Bridge Oil Ltd. v. Emerald Reefer Lines, LLC</u>, No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), <u>adopted by</u>, 2009 U.S. Dist. LEXIS 6074 (S.D.N.Y. Jan. 26, 2009).  Third, Defendants have not defended themselves or participated in this action since May 2021 and affirmatively stated their intention not to do so.  (<u>See</u> ECF No. 137).  Thus, because the requirements of Rule 55 are satisfied and the relevant factors weigh in Mr. Bray's favor, entry of default judgment is proper in this case.

**B. Liability**[3]

    **1. The Copyright Claims**

To prevail on a copyright infringement claim under the Copyright Act, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). Copying is "generally established by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works." Kregos v. AP, 3 F.3d 656, 662 (2d Cir. 1993).

Here, Mr. Bray plausibly alleges that he has copyright certificates for the Registered Songs. (ECF No. 51 ¶ 114). For most of these songs, however, Mr. Bray's creative contributions were made during the Term of the Agreement, under which he assigned any potential copyright interests to Purple Eagle. (See ECF No. 51-1 ¶ 2). In signing the Agreement, Mr. Bray acknowledged that his contributions were on a "work-for-hire" basis under the Copyright Act and, even if his contributions were not works-made-for-hire, that he was assigning all "right, title and interest" in his contributions to Purple Eagle. (See id.) Mr. Bray does not dispute the validity of this provision of the Agreement. (See generally ECF No. 51). Mr. Bray admits that the "parties entered into a contract 'as a work-for-hire,'" but asserts that the Agreement only covered music provided to him by Purple Eagle, and "did not cover any musical compositions contributed by [Mr. Bray]." (ECF No. 160 ¶ 7). Mr. Bray does not provide any authority to support this interpretation of the Agreement, and the Agreement refutes it. (See ECF No. 51-1 ¶ 2 (providing

---

[3] The SAC does not assert a breach of contract claim (see ECF No. 51), nor does Mr. Bray now seek to recoup unpaid wages or royalties under the Agreement (see ECF No. 160).

that "all material prepared, written, and/or created by [Mr. Bray], or contributed to the Material by [Mr. Bray] shall be on a work-for-hire basis . . . and shall belong to [Purple Eagle]. In the event any such contribution or material is not considered a work-made-for-hire, [Mr. Bray] hereby irrevocably assigns to [Purple Eagle] all of [Mr. Bray's] right, title and interest in such Material")). Unguided by evidentiary support or case law, and in the face of the plain language of the Agreement, the Court cannot agree with Mr. Bray's bare assertion that he owns the copyrights to all contributions he made to the Band within the Term because those contributions "were not governed by the contract." (ECF No. 160 ¶ 8).

Thus, any creative contributions Mr. Bray made to the Registered Songs created during the Term—May 31, 2011 to May 31, 2014 (ECF No. 51 ¶¶ 8, 31)—cannot serve as predicates for the Copyright Claims. See Vargas v. Viacom Int'l, Inc., No. 18 Civ. 474 (LLS), 2018 WL 6920769, at *4 (S.D.N.Y. Nov. 30, 2018) (upholding agreement to "transfer[] ownership of the copyright to his compositions through" a written publishing agreement, pursuant to which plaintiff had assigned his interests) (collecting cases); Preta v. Collectibles, Inc., No. 00 Civ. 279 (JGK), 2002 WL 472134, at *4 (S.D.N.Y. Mar. 27, 2002) (finding that plaintiff who assigned copyright to defendants through multiple songwriter agreements lacked copyright interest); see also Contractual Obligation Prods., LLC v. AMC Networks, Inc., 546 F. Supp. 2d 120, 127–28 (S.D.N.Y. 2008) (noting that, under the Copyright Act, "when a work is produced as a work-made-for-hire, the 'person for whom the work was prepared is considered the author . . . [and] owns all of the rights comprised in the copyright,'" and that "assignments of copyrights for work yet to be created are commonplace in the entertainment industry and have repeatedly been held enforceable in federal courts") (quoting 17 U.S.C. § 201(b)).

Only with respect to the Post-Term Songs can the Court infer that Mr. Bray's contributions were fall outside the Agreement's work-for-hire clause. The Post-Term Songs were released on the Band's Third Album on June 15, 2015, after the Term expired. (See ECF No. 51 ¶ 60). Therefore, the Court finds that Mr. Bray has plausibly established that he holds a copyright in each of the Post-Term Songs. See Valdez v. Laffey Assocs., No. 07 Civ. 4566 (BMC) (LB), 2010 WL 1221404, at *4 (E.D.N.Y. Mar. 26, 2010) (holding that, in the absence of an operative contract, works were "not works for hire," such that plaintiff was the author of the works and retained "sole ownership in the validly obtained copyrights"). And of the Post-Term Songs, Defendants licensed two of them—"Marine's Hymn" and "Amazing America"—for profit without Mr. Bray's permission and without compensating him. (Id. ¶¶ 116, 127). Mr. Bray has also submitted evidence that Defendants derived income from the Post-Term Songs and the Third Album via CD Baby, the primary distribution channel for the Band's music. (ECF Nos. 160 ¶ 22; 160-1). Defendants' default equates to a concession of liability as to the allegations in the SAC, which the Court finds adequately pleads a valid cause of action for infringement of Mr. Bray's copyrights in the Post-Term Songs. See Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas, 509 F. App'x 54, 56 (2d Cir. 2013) (liability of defaulting defendant depends on whether "allegations are sufficient to state a cause of action") (summary order). Mr. Bray has substantiated ownership of valid copyrights in the Post-Term Songs by providing the copyright registration numbers (ECF No. 51 ¶ 114) and allegations plausibly supporting the conclusion that Defendants held themselves out as owners by licensing two of the songs for profit and deriving income without compensating Mr. Bray (id. ¶¶ 116 (licensing "Marine's Hymn"), 127 (licensing "Amazing America"); ECF No. 160-1 (showing income from the Post-Term Songs)). See, e.g., Pearson Educ., Inc. v. Labos, No. 19 Civ.

487 (JPC), 2021 WL 4507530, at *3 (S.D.N.Y. Sept. 30, 2021) (holding that, for a default judgment, "duly register[ing] the copyrights in the[] works . . . is <u>prima</u> <u>facie</u> evidence of the validity of the copyrights") (citing 17 U.S.C. § 410(c)).

Accordingly, Mr. Bray has established Defendants' liability for copyright infringement as to the Post-Term Songs as a matter of law.

### 2.  The Declaratory Judgment Claim

In the Motion, Mr. Bray seeks a declaratory judgment that he owns the copyrights to 20 songs.  (<u>See</u> ECF No. 159-1 ¶ 3; 160 ¶ 18).  The Declaratory Judgment Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants."  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995).  The "very purpose of the declaratory judgment procedure is to prevent the accrual of . . . avoidable damages."  <u>Am. Mach. & Metals v. DeBothezat Impeller Co.</u>, 166 F.2d 535, 536 (2d Cir. 1948).  For declaratory judgment, a controversy must be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts."  <u>Ashwander v. Tennessee Valley Auth.</u>, 297 U.S. 288, 325 (1936).  The Second Circuit has held that "'[t]he two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' . . . [I]f either of these objectives can be achieved the action should be entertained and the failure to do so is error."  <u>Broadview Chem. Corp. v. Loctite Corp.</u>, 417 F.2d 998, 1001 (2d Cir. 1969), <u>cert. denied</u>, 397 U.S. 1064 (1970).

Of the 20 songs that are the subject of the Declaratory Judgment Claim, Mr. Bray has provided copyright registration numbers for only 16, however (compare ECF No. 160 ¶ 18 with ECF No. 51 ¶ 114), and the Court has already found that he possesses a copyright interest only in the Post-Term Songs.  (See § IV(B)(1), supra).  Under these circumstances, Mr. Bray is entitled to a declaratory judgment that he owns the copyrights to the Post-Term Songs.  See Intrepidus, LLC v. Bivins, No. 15 Civ. 7721 (LTS) (HBP), 2017 WL 1608896, at *7 (S.D.N.Y. Apr. 28, 2017) (granting request for declaratory judgment as to copyrighted works, and declaring that a party "is the sole rightful owner of the works registered under U.S. copyright registrations . . . and that Defendants' actions described in the Amended Complaint constitute [] unlawful infringement"); Peterson v. Kolodin, 995 F. Supp. 2d 254, 262 (S.D.N.Y. 2014) (same, declaring that "plaintiffs are the owners of the copyrights in all the versions of the [r]ecordings"); Mason v. Jamie Music Publ'g Co., 658 F. Supp. 2d 571, 588 (S.D.N.Y. 2009) (same, declaring that "[plaintiff] is the owner of the copyright in the [c]omposition").

Accordingly, the Court respectfully recommends that Mr. Bray's Declaratory Judgment Claim be GRANTED IN PART and DENIED IN PART, and that the Court declare only that he is the owner of copyrights in the Post-Term Songs:  "Amazing America" (CR Registration # PA 2-139-608), "Soldier's Christmas" (CR Registration # PAu 3-380-536), "The Marine's Hymn" (CR Registration # 2-139-600), and "God Bless America" (CR Registration # PA 2-139-604).

### 3.  The Remaining Claims

Mr. Bray's remaining causes of action are the Accounting Claim, the Unjust Enrichment Claim, and the Constructive Trust Claim.  (ECF No. 51 ¶¶ 141–61).  Based on Mr. Bray's admission in the Supporting Declaration that the Accounting Claim "is effectively moot" given Mr.

Mgrdechian's passing (ECF No. 160 ¶ 17 n.1), the Court respectfully recommends that no recovery be awarded as to the Accounting Claim.

Mr. Bray's Unjust Enrichment and Constructive Trust Claims are predicated on his allegations that Defendants infringed his copyrights. (ECF No. 51 ¶¶ 148 (alleging that "Defendants have been making use of, and continue to make use of, Plaintiff's musical compositions"), 158 (alleging that "Mr. Mgrdechian would be unjustly enriched if permitted to retain sole ownership of the company"). These claims are barred by the Copyright Act, which "preempts state law actions that seek to vindicate rights equivalent to those protected under the Copyright Act." Hines v. W. Chappell Music Corp., No. 20 Civ. 3535 (JPO), 2022 WL 3646206, at *1 (S.D.N.Y. Aug. 23, 2022) (quoting Transcience Corp. v. Big Time Toys, LLC, 50 F. Supp. 3d 441, 453 (S.D.N.Y. 2014)). "It is well-settled law in this circuit that an unjust enrichment claim based on copyrighted subject matter is preempted by the Copyright Act, because a claim for unjust enrichment contains no 'extra element' that makes it qualitatively different from a copyright infringement claim." Mills v. Alphabet Inc., No. 16 Civ. 4669 (VSB), 2018 WL 1569838, at *7 (S.D.N.Y. Mar. 28, 2018); see Einiger v. Citigroup, Inc., No. 14 Civ. 4570 (GHW), 2014 WL 4494139, at *7 (S.D.N.Y. 2014) ("[t]he overwhelming majority of courts in this circuit have held that an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted"). The same is true of claims seeking a constructive trust. See Gary Friedrich Enters., LLC v. Marvel Enters., 713 F. Supp. 2d 215, 222 (S.D.N.Y. 2010) (dismissing plaintiff's "claim for a constructive trust in connection with unauthorized use of copyrightable work" because "claims for the imposition of a constructive trust based on copyright infringement do not satisfy the 'extra element' test and are thus preempted by the Copyright Act"); Maurizio

v. Goldsmith, No. 96 Civ. 4332 (LMM), 2001 WL 1568428, at *6 (S.D.N.Y. Nov. 30, 2021) (finding that "the claim for a constructive trust is preempted" by the Copyright Act).

As Judge Pitman previously found in the R&R, the Unjust Enrichment and Constructive Trust "claims . . . are all based on plaintiff's copyright infringement claim . . . [and] merely seek different remedies for the same alleged wrong." Bray I, 2019 WL 1549044, at *8. Thus, the Unjust Enrichment and Constructive Trust Claims are preempted by the Copyright Act.

In the alternative, because Mr. Bray does not advance any argument in support of relief for unjust enrichment, and indeed, mentions the claim only twice, when listing the causes of action in the SAC (ECF No. 160 ¶¶ 3, 17), the Court finds that Mr. Bray has abandoned this claim. See Arch Specialty Ins. Co. v. Canbert Inc., No. 19 Civ. 5920 (EK) (PK), 2021 WL 1200329, at *3 n.3 (E.D.N.Y. Mar. 9, 2021) (recommending that claim asserted in complaint but "not discussed in the Motion" for default judgment be deemed abandoned), adopted by, 2021 WL 1193004 (E.D.N.Y. Mar. 30, 2021); Time Inc. Retail v. Newsways Servs., Inc., No. 16 Civ. 9479 (VSB) (JLC), 2018 WL 316995, at *4 (S.D.N.Y. Jan. 8, 2018) (deeming abandoned requests in complaint for attorneys' fees, costs, and prejudgment interest where plaintiff failed to provide legal or documentary support for the requests in its motion for default judgment), adopted by, 2018 WL 2332067 (S.D.N.Y. May 22, 2018); Melgadejo v. S & D Fruits & Vegetables Inc., No. 12 Civ. 6852 (RA) (HBP), 2015 WL 10353140, at *2, n.1 (S.D.N.Y. Oct. 23, 2015) (deeming abandoned requests in complaint for pre and postjudgment interest and damages for conversion where the plaintiff did "not seek recovery for these items" in his damages submission), adopted by, 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016). Similarly, Mr. Bray does not provide any evidentiary support or authority supporting the imposition of a constructive trust granting him complete ownership over Purple

Eagle simply because Purple Eagle infringed certain of his copyrights.  See USHA Holdings, LLC v. Franchise India Holdings, Ltd., No. 12 Civ. 3492 (KAM), 2015 WL 13741743, at *16 (E.D.N.Y. Sept. 11, 2015) (denying request for a constructive trust in the default judgment context where plaintiffs "failed to present the legal authority that would support this relief").  Moreover, Mr. Bray does not address that "the existence of valid contracts between the parties" and the availability of monetary damages precludes the imposition of a constructive trust.  Cherotti v. Exphand, Inc., No. 20 Civ. 11102 (SLC), 2023 WL 5526625, at *15 (S.D.N.Y. Aug. 28, 2023) (collecting cases).

Accordingly, the Court respectfully recommends that Mr. Bray's Unjust Enrichment and Constructive Trust Claims be DISMISSED WITH PREJUDICE.

**C.  Damages**

Having determined that Defendants are liable for the Copyright Claims as to the Post-Term Songs, the Court must determine whether Mr. Bray has provided sufficient evidence to support his claimed damages, and if so, the amount of damages to be awarded.  See Transatlantic Marine, 109 F.3d at 111; Bleecker v. Zetian Sys., Inc., No. 12 Civ. 2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013).  In connection with the Motion, Mr. Bray submitted the Supporting Declaration (ECF No. 160), attached to which is the Spreadsheet, which sets forth the Band's "total royalties earned from CD Baby."  (ECF No. 160-1).  Despite warnings, Defendants have not responded to the Court's Orders, the Motion, or the Damages Submission, or otherwise contacted the Court.  (ECF Nos. 138; 165).  The Court finds that Mr. Bray has met his evidentiary burden of proving damages, and that an in-person hearing is unnecessary because his submissions, combined with Defendants' admissions resulting from their default, constitute a

sufficient basis from which to evaluate the fairness of his damages request.  See Fustok, 873 F.2d at 40; Bos. Sci. Corp. v. N.Y. Ctr. for Specialty Surgery, No. 14 Civ. 6170 (RRM), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015), adopted by, 2016 WL 8711378 (E.D.N.Y. Jan. 29, 2016).  From this evidence, the Court will next analyze the appropriate amounts of damages and interest.

      **1.  Damages for Copyright Infringement**

Under the Copyright Act, a copyright owner may elect to pursue either statutory damages or actual damages.  See 17 U.S.C. § 504(a); see, e.g., Howarth v. FORM BIB LLC, No. 18 Civ. 7047 (JPO) (SN), 2020 WL 3441030, at *2 (S.D.N.Y. May 11, 2020), adopted by, 2020 WL 3436685 (S.D.N.Y. June 22, 2020).  Where, as here, a plaintiff elects to pursue actual damages (see ECF No. 160 ¶¶ 21–23), he may recover (i) "the actual damages suffered by him or her as a result of the infringement," and (ii) "any profits of the infringer that are attributable to the infringement and not taken into account in computing actual damages."  Steele v. Bell, No. 11 Civ. 9343 (RA) (RLE), 2014 U.S. Dist. LEXIS 44976, at *26 (S.D.N.Y. Mar. 3, 2014), adopted by, 2014 WL 1979227 (S.D.N.Y. Mar. 28, 2014) (quoting 17 U.S.C. § 504(b)).  The "primary measure of recovery is the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement."  Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1118 (2d Cir. 1986).  To establish the infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue . . . ."  Lee v. 162 D&Y Corp., No. 18 Civ. 2580 (BC) (PK), 2022 WL 199288, at *8 (E.D.N.Y. Dec. 30, 2022), adopted by, 2023 WL 199288 (S.D.N.Y. Jan. 17, 2023) (quoting Bus. Trends Analysts, Inc. v. Freedonia Grp., Inc., 887 F.2d 399, 403 (2d Cir. 1989) (quoting 17 U.S.C. § 504(b))).  Actual damages "must bear a 'necessary, immediate and direct causal connection' to the defendant's infringement."  Steele,

2014 U.S. Dist. LEXIS 44976, at \*26 (quoting Big Seven Music Corp. v. Lennon, 554 F.2d 504, 509 (2d Cir. 1977)).  When an infringing defendant's sales "cannot be precisely determined, a court may resolve doubts against the defendant in calculating damages."  BMaddox Enters. LLC v. Oskouie, No. 17 Civ. 1889 (RA) (SLC), 2022 WL 543050, at \*4 (S.D.N.Y. Jan. 10, 2022), adopted by, 2022 WL 539437 (S.D.N.Y. Feb. 23, 2022).

Here, Mr. Bray seeks the Requested Damages, representing his estimate that Defendants earned $323,225.53 in revenue from CD Baby.  (ECF No. 160 ¶¶ 22–23; see ECF No. 160-1).  Mr. Bray admits that he is "unable to determine the total gross revenue," i.e., revenue apart from that listed in the Spreadsheet, but posits that, "rather than putting forth additional efforts to try to figure out the remainder of the revenue, which will likely be significantly more, Plaintiff respectfully submits that this Court should enter a judg[]ment in the amount of [the Requested Damages], plus interest."  (ECF No. 160 ¶ 23).  As discussed above (see § IV(B)(1)), however, Mr. Bray has only demonstrated a valid copyright interest in the Post-Term Songs, so he is only entitled to damages the bear a "direct causal connection" to infringement as to those, i.e., Defendants' revenue as to the Post-Term Songs.  That revenue includes the gross CD sales, distribution sales, and licensing and royalties of the Post-Term Songs, as well as a percentage of the revenue the Third Album, on which the Post-Term Songs appear.  (See ECF No. 160-1). Because the Post-Term Songs represent approximately 31% of the 13 songs on the Third Album,[4] Mr. Bray is entitled to 31% of that album's revenue.  Accordingly, the Court respectfully recommends that Mr. Bray be awarded actual damages as follows:

---

[4] 4 / 13 ≈ .31.

| Work | CD Sales | Distribution Sales | Licensing and Royalties | Total |
|------|----------|--------------------|-----------------------|-------|
| Amazing America | $4.68 | $805.28 | $4.76 | $814.72 |
| Soldier's Christmas | $3.60 | $1,279.25 | $10.26 | $1,293.11 |
| The Marine's Hymn | $2.70 | $57.06 | $2.13 | $61.89 |
| God Bless America | $0 | $0 | $0 | $0 |
| American Hero (Red) (Album) | $3,597.61 | $25,575.24 | $330.66 | $9,146.09[5] |
| **TOTAL** | | | | **$11,315.81** |

### 2.  Interest

In the SAC, Mr. Bray requests prejudgment interest.  (ECF No. 51 at 38).  In the Motion, Mr. Bray requests "interest," without delineating whether prejudgment, postjudgment, or both. (Id.; ECF No. 160 ¶ 23 & at 9).  The Court construes Mr. Bray to be seeking both prejudgment and postjudgment interest.

### a.  Prejudgment Interest

"The Copyright Act neither allows nor prohibits an award of prejudgment interest, and the issue of the permissibility of prejudgment interest is unresolved in this Circuit."  Tetra Images, LLC v. Grahall Partners, LLC, No. 19 Civ. 5250 (PMH), 2021 WL 2809566, at *6 (S.D.N.Y. July 6, 2021) (quoting Capitol Recs., Inc. v. MP3tunes, LLC, No. 07 Civ. 9931 (WHP), 2015 WL 13684546, at *4 (S.D.N.Y. Apr. 3, 2015)).  "District courts thus have the discretion to award or not award prejudgment interest in copyright cases and cases where other federal law is similarly neutral." Joe Brands LLC v. Edcmaker, No. 21 Civ. 5278 (LLS) (RWL), 2023 WL 8591613, at *4 (S.D.N.Y. Nov. 28, 2023), adopted by, 2023 WL 8763450 (S.D.N.Y. Dec. 19, 2023).

Here, "[a]s the authority to grant prejudgment interest is not clear"—and Mr. Bray did not elaborate in his Motion—"the Court is not inclined to grant that relief."  Tetra,

---

[5] $29,503.51 *.31 ≈ $9,146.09.

2021 WL 2809566, at *6; see Stokes v. MilkChocolateNYC LLC, No. 22 Civ. 6786 (PAE) (RWL), 2023 WL 4447073, at *12 (S.D.N.Y. June 20, 2023) (recommending denial of prejudgment interest on copyright infringement claims), adopted by, 2023 WL 4447073 (S.D.N.Y. July 11, 2023). Accordingly, the Court respectfully recommends that no prejudgment interest be awarded.

### b. Postjudgment Interest

The applicable federal statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961. The Second Circuit has explained that an award of postjudgment interest is mandatory. See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008). Given the mandatory nature of postjudgment interest, the Court respectfully recommends that Mr. Bray be awarded postjudgment interest in an amount consistent with 28 U.S.C. § 1961.

### 3. Costs

Mr. Bray seeks reimbursement of costs in the amount of $400.00 for the Court's filing fee. (ECF No. 166). A court may take judicial notice of costs reflected on the docket and award those costs. See, e.g., McDermott v. Nyfirestore, No. 18 Civ. 10853 (AJN) (SLC), 2021 WL 952455, at *6 (S.D.N.Y. Jan. 15, 2021) (doing so in a copyright infringement case), adopted by, 2021 WL 950507 (S.D.N.Y. Mar. 12, 2021). The Court takes judicial notice that Mr. Bray paid the Court's filing fee, and respectfully recommends that he be awarded costs in the amount of $400.00. Id.

## V.    **CONCLUSION**

For the reasons set forth above, the Court respectfully recommends that:

1.  Mr. Bray be declared the owner of copyrights in recordings of "Amazing America" (CR Registration # PA 2-139-608), "Soldier's Christmas" (CR Registration # PAu 3-380-536), "The Marine's Hymn" (CR Registration # 2-139-600), and "God Bless America" (CR Registration # PA 2-139-604);

2.  Mr. Bray be awarded:

    a.    Actual damages for copyright infringement under the Copyright Act in the amount of $11,315.81;

    b.    Postjudgment interest pursuant to 28 U.S.C. § 1961; and

    c.    Costs in the amount of $400.00; and

3.  All Mr. Bray's other claims for damages and other relief be DISMISSED WITH PREJUDICE.

Mr. Bray shall serve a copy of this Report and Recommendation on Defendants and, by **January 8, 2024**, file proof of service on the docket.

Dated:          New York, New York
                January 3, 2024

**SARAH L. CAVE**
**United States Magistrate Judge**

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).   A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Daniels.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).