UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
DAVID BRAY,

                      Plaintiff,

      -against-

PURPLE EAGLE ENTERTAINMENT, INC. and
RICHARD MGRDECHIAN,

                      Defendants.
------------------------------------x

MEMORANDUM DECISION
AND ORDER

18 Civ. 5205 (GBD) (SLC)

GEORGE B. DANIELS, United States District Judge:

      Plaintiff David Bray brought this suit against Defendants Purple Eagle Entertainment, Inc. ("Company") and Richard Mgrdechian[1] ("Defendant," together with Company, "Defendants") asserting causes of action for violations of the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. §§ 106 and 501, declaratory relief, accounting, unjust enrichment, and a constructive trust. (Second Am. Compl. ("SAC"), ECF No. 51, ¶¶ 91–161.) Plaintiff alleges that Defendants infringed on his copyright interests in 17 songs that he contributed to a musical group Defendants owned and managed, Madison Rising (the "Band"). (*Id.* ¶¶ 1–5, 114–15). Plaintiff seeks monetary damages and injunctive relief for Defendants' copyright infringement and unjust enrichment, as well as "[a] judicial declaration of the parties' respective ownership rights and obligations in relation to the[] songs . . . ." (*Id.* ¶¶ 100, 138–41, 152.) Plaintiff further seeks an accounting and a constructive trust granting him "complete ownership" of the Company. (*Id.* ¶¶ 145, 161; Obj. to R. & R. ("Objection"), ECF No. 173, at 6.) Plaintiff seeks relief from the Company only. (*See* Memo Endorsement, ECF No. 174, at 1.)

---

[1] A Suggestion of Death was filed on May 23, 2021 indicating that Mr. Mgrdechian passed away in August 2020. (Suggestion of Death, ECF No. 136.)

1

On March 21, 2023, this Court ordered that default judgment be entered in Plaintiff's favor after Defendants failed to defend themselves in this action. (Order Granting Mot. for Default J., ECF No. 163.) Before this Court is Magistrate Judge Sarah L. Cave's January 3, 2024 Report and Recommendation to (1) declare that Plaintiff is the owner of copyrights in recordings of "Amazing America," "Soldier's Christmas," "The Marine's Hymn," and "God Bless America"; (2) award Plaintiff actual damages for copyright infringement under the Copyright Act in the amount of $11,315.81, post-judgment interest pursuant to 28 U.S.C. § 1961, costs in the amount of $400.00; and (3) dismiss Plaintiff's other claims and requests for relief. (R. &R. ("Report"), ECF No. 167, at 2, 25.)

Plaintiff filed a timely objection to the Report on January 17, 2024. Having reviewed the objected-to portions of the Report *de novo* and the remainder of the Report for clear error, this Court **ADOPTS** the Report, except for certain damages calculations and amounts.

## I. FACTUAL BACKGROUND

On May 31, 2011, Plaintiff and Defendant entered into the Band Member Agreement ("Agreement"), which set forth the parties' agreement that Plaintiff would join Defendants' band. (Agreement, ECF No. 51–1, ¶¶ 1–3.) Pursuant to the Agreement, Plaintiff agreed to work for the Company "as a work-for hire . . . band member in recording and performing (the 'Obligations') the music, songs and lyrics (the 'Material') as provided to [him] by [Company] . . . ." (*Id.* ¶ 1.) The Agreement was subject to a three-year term (the "Term"), with an option "to extend the [Term] for an additional three (3) year period upon payment of a mutually agreed to extension fee to [Plaintiff] not to exceed $25,000." (*Id.* ¶ 3.)

The Agreement also sets forth the ownership rights to the Material, providing that the Material constituted "a work-for-hire" which the Company owned as "the sole and exclusive

owner of the copyright in the Material, including all rights of copyright registration, renewal and extension . . . ." (*Id.* ¶ 2(a).) Similarly, any material that Plaintiff "prepared, [wrote], and/or created . . . or contributed to the Material" was "on a work-for-hire basis" and "belong[ed] solely to the Company." (*Id.* ¶ 2.) In the event that any such material failed to qualify as a work-for-hire, the Agreement specified that Plaintiff agreed to "irrevocably assign[] to the Company all of [his] right, title and interest in such Material." (*Id.*) Further, for any contributions Plaintiff made to the Material, Plaintiff was only entitled to "writers' credit and royalties in conjunction with all other co-author[]s of such Material for such Material per the terms of th[e] Agreement, other third party agreements and pursuant to the music industry standards." (*Id.* ¶ 6.)

The Band released three albums at issue, with the third being a remastered version of the second. (SAC ¶¶ 36–37, 56, 60.) Plaintiff's creative input was incorporated into four songs on the Band's self-titled debut album, "Madison Rising," released on October 17, 2011, for which he received writers' credit but not royalties: "Soldiers of America," "Hallowed Ground," "Before the Hyphens Came," and "Right to Bear." (*Id.* ¶¶ 37, 40.) The Band released the second album, "American Hero," on November 5, 2013, which comprised "original songs composed by [Plaintiff]" and Plaintiff's rock adaptation of "America the Beautiful." (*Id.* ¶ 56.) The third album, "American Hero (Red)," released after the Term's expiration on June 15, 2015, consisted of "all of the songs from the original American Hero album (except 'Come to the Ready' . . .), plus two new original compositions by [Plaintiff], 'Amazing America' and 'Soldier's Christmas,'" as well as "rock versions of . . . 'The Marine Hymn' and 'God Bless America.'" (*Id.* ¶ 60.)

In May 2014, just before the Term's expiration, Defendant decided not to extend the Term. (*See id.* ¶ 68.) Rather, Defendant explained to Plaintiff that "they did not need a new or extended contract because, with all of the valuable contributions [Plaintiff] had made, they would continue

3

without a contract and were 'basically partners.'" (*Id.* ¶ 71.) Defendant, accordingly, promised Plaintiff that "he would issue stock certificates for [Plaintiff's] partial ownership of [the Company]," but never did so. (*Id.*)

Plaintiff and Defendant's business relationship deteriorated thereafter, culminating in Defendant suspending Plaintiff for 30 days for "alleged behavioral issues" and Defendant providing Plaintiff with a new proposed agreement and an ultimatum: sign within seven days or be terminated. (*See id.* ¶¶ 72, 76–78.) Plaintiff refused to sign the proposed agreement, and Defendant "terminated the relationship." (*Id.* ¶ 78.)

Plaintiff claims that the United States Copyright Office has issued registration certificates "evidencing [his] copyright interests to [17] songs": "Soldier's Christmas," "Warrior Inside," "Last Call," "Amazing Grace/Taps," "Ready If It Goes There," "Amazing America," "Hallowed Ground II," "Reflection PTSD," "Something Wicked," "Open Road," "Lock N' Load," "Hero," "Come to the Ready," "America the Beautiful," "God Bless America," "The Marine's Hymn," and "Star-Spangled Banner." (*Id.* ¶ 114). However, he fails to allege when these registration certificates were issued. Of the foregoing songs, four were released following the Term's expiration: "Amazing America," "Soldier's Christmas," "The Marine's Hymn," and "God Bless America," (the "Post-Term Songs"). (*Id.* ¶ 60.)

Plaintiff holds a copyright interest in the "composition and sound recording" and as a "co-author" of "Amazing America" and "Soldier's Christmas." (*Id.* ¶ 92.) As for Plaintiff's arrangements of "The Marine's Hymn" and "God Bless America," which are "public domain musical compositions," Plaintiff claims they are "new arrangements" solely of his creation and that he is the "owner of a copyright interest in and to those derivative musical compositions . . . ." (*Id.* ¶ 95.)

4

With respect to specific infringing conduct, Plaintiff alleges that Defendants infringed on his copyright interests by licensing certain songs for television and/or internet use and/or by uploading them to music platforms for purchase and streaming without his consent or sharing of revenues. (*Id.* ¶¶ 116–136.) Plaintiff alleges that this conduct occurred between 2014 and 2017. (*Id.*)

## II. PROCEDURAL BACKGROUND

On June 10, 2018, Plaintiff filed a complaint ("Original Complaint"), asserting causes of action for declaratory relief, copyright infringement, accounting, unjust enrichment, and constructive trust. (Original Complaint, ECF No. 1, ¶¶ 112–147.) He then filed another complaint (the "FAC") on August 3, 2018, asserting the same causes of action. (FAC, ECF No. 19, ¶¶ 115–154.) Defendants filed a motion to dismiss the FAC thereafter, on August 14, 2018, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), among other things. (First Mot. to Dismiss, ECF No. 21.) On February 11, 2019, this Court adopted Magistrate Judge Henry B. Pitman's Report and Recommendation dated January 18, 2019 in full, dismissing the FAC with leave to replead, principally for the FAC's failure "to allege any specific conduct by defendants that constitute[d] copyright infringement." (Report at 7 (citation omitted).)

On March 21, 2019, Plaintiff filed the Second Amended Complaint, which contained the same causes of action as the FAC but added specific allegations of copyright infringement. (*See* SAC ¶¶ 116–136.) Defendants filed an answer to the SAC on September 5, 2019. (Answer to Am. Compl., ECF No. 73.)

On May 23, 2021, Defendants' counsel filed a Suggestion of Death as to Defendant Mgrdechian and moved to withdraw as counsel, stating that "[t]he only heirs to [Mr.] Mgrdechian's company and assets do not want to be involved . . . in the affairs of the [Company]

5

by any means. They do not want to proceed with any legal proceedings. The [Company] has essentially been abandoned by [Mr. Mgrdechian], now deceased, and by his family and associates." (Suggestion of Death; Mot. to Withdraw, ECF No. 137, ¶ 5.)

Accordingly, in July 2021, Magistrate Judge Cave ordered Plaintiff to initiate default proceedings by requesting a Certificate of Default and to file a Motion for Default Judgment. (Order to Initiate Default Proceedings, ECF No. 139.) After a previous failed attempt, the Clerk of Court entered a Certificate of Default against Defendants, (Clerk's Certificate of Default, ECF No. 158), prompting Plaintiff to move for default judgment and effectuate service on Defendants. (*See* Mot. for Default J., ECF No. 159; Aff. of Service, ECF No. 162.)

On March 21, 2023, this Court granted Plaintiff's motion and referred the matter to Magistrate Judge Cave for an inquest on damages. (Order Granting Mot. for Default J., ECF No. 163; Am. Order Referring Case, ECF No. 164.) On the next day, March 22, 2023, Magistrate Judge Cave issued an order "warning Defendants that, if they did not respond to Plaintiff's submissions," they would forgo an in-court hearing and that "a Report and Recommendation concerning damages based on Plaintiff's written submissions alone" would issue. (Report at 9; Scheduling Order, ECF No. 165, at 2.) Defendants never responded.

### III. LEGAL STANDARDS

#### A. Review of a Magistrate Judge's Report and Recommendation

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* Portions of a magistrate judge's report to which no or "merely perfunctory" objections have been made are reviewed for clear error. *Edwards v. Fischer,* 414 F. Supp. 2d 342, 346–47

(S.D.N.Y. 2006); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition. The clear error standard also applies if a party's "objections are improper—because they are conclusory, general, or simply rehash or reiterate the original briefs to the magistrate judge." *Stone v. Comm'r of Soc. Sec.*, No. 17-CV-569 (RJS) (KNF), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation and internal quotation marks omitted). Clear error is present when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *Brown v. Cunningham*, No. 14-CV-3515 (VEC) (MHD), 2015 WL 3536615, at *4 (S.D.N.Y. June 4, 2015) (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006)).

### B. Liability

Although a defendant's default is "a concession of all well-pleaded allegations of liability," *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), a reviewing court must still determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015). The reviewing court looks to whether the Plaintiff's complaint states a claim on which relief can be granted in order to award damages. *See Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008); *Lopez v. Emerald Staffing, Inc.*, No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020).

### C. Damages

After establishing liability, a district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Getty Images (US) Inc. v. Advernet, Inc.*, 797 F. Supp. 2d 399, 411 (S.D.N.Y. 2011) (citation omitted). A plaintiff must submit admissible evidence to establish its entitlement to recovery and to prove the extent of damages. *See Lopez*, 2020 WL 915821 at *5. The reviewing court may conduct an inquest into damages without an

evidentiary hearing where there is a sufficient basis on which to make a calculation. *See Fustok v. ContiCommodity Serv., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

## IV. PLAINTIFF HAS ESTABLISHED CERTAIN COPYRIGHT INFRINGEMENT AND DECLARATORY RELIEF

### A. Copyright Claims

To establish a copyright claim for infringement, Plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). As explained in the Report, Plaintiff has done so with respect to the Post-Term Songs only. (Report at 15–16.) Plaintiff alleges that his contributions to the Post-Term Songs fall outside of the Agreement's work-for-hire provision and therefore any copyright ownership is attributable to him and not Defendants. (*See id.* at 15.) Plaintiff has proffered copyright registration information substantiating his copyright ownership in the Post-Term Songs, (*See* SAC ¶ 114), and has plausibly alleged that Defendants improperly claimed ownership in the Post-Term Songs, from which they profited without his permission or compensating him. (*Id.* ¶¶ 116, 127, 129–136; ECF No. 160 ¶ 22; ECF No. 160-1.) Defendants' default constitutes a concession as to these allegations and their corresponding liability. *See Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013).

However, Plaintiff has not established a copyright interest in any Material created and released during the Term, which instead constitute works-for-hire owned by Defendants. (*See* Agreement ¶ 2; Report at 13–14.) And even if they were not, Plaintiff assigned any copyright interests to Defendants in any event pursuant to Paragraph 2 of the Agreement. (*See* Agreement ¶ 2; *Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 334 (S.D.N.Y. 2003) (finding that, pursuant to a work-for-hire agreement, "any contributions by [the artist] to the [work] . . . were

8

works for hire" and thus the hirer owned the copyrights, not the artist); *Preta v. Collectibles, Inc.*, No. 00-CV-0279 (JGK), 2002 WL 472134, at *2–4 (S.D.N.Y. Mar. 27, 2002) (concluding that the plaintiff did not hold any copyright interest in compositions he created because he assigned any such interest to the defendants through multiple songwriter agreements).

Plaintiff's objection to the contrary is unavailing. Plaintiff argues that, pursuant to Paragraph 6 of the Agreement, he owns copyright interests in certain Material he created during the Term because Defendants did not explicitly "request" such Material before Plaintiff provided it to Defendants.[2] (*See* Objection at 1–2 (quoting SAC ¶ 104(a) ("Subsection 6 makes clear that the Agreement only applies to works which were specifically requested by the company.")).) Plaintiff further argues that a related state court decision in a lawsuit between the Company and Plaintiff finding that he was an independent contractor bolsters this argument, such that the Material at issue was created under his independent contractor status and thus falls outside of the Agreement. (*Id.* at 2.)

Plaintiff's interpretation not only defies logic but also the terms of the Agreement. Plaintiff does not begin to explain why these contributions to the Band during the Term were exceptions that the parties did not want covered by the terms of the Agreement. Rather, as provided in Paragraph 2, Plaintiff agreed to refrain from making any "claim to ownership of the copyright in the Material *unless expressly agreed to otherwise* by the Company in writing or as set forth [t]herein" and that, subject to Paragraph 6, "all material prepared, written, and/or created by [him], or contributed to the Material by [him,] shall be . . . a work-for-hire . . . ." (Agreement ¶ 2.) And

---

[2] Paragraph 6 states: "in the event that [Plaintiff] contributes materially to the authorship of any of the Material, [Plaintiff] shall receive writers' credit and royalties in conjunction with all other co-author[]s of such Material for such Material per the terms of this Agreement, other third party agreements and pursuant to the music industry standards. [Plaintiff] acknowledges and agrees that [he] shall contribute if and only when request[ed] by the Company, and then [he] shall only contribute at his reasonable discretion." (Agreement ¶ 6.)

if not a work-for-hire, Plaintiff "irrevocably assign[ed] to the Company all of [his] right, title and interest in such Material." (*Id.*)

The caveat contained in Paragraph 6, entitled "Credit," (1) clarifies that notwithstanding Plaintiff disclaiming any copyright interest in all such Material, he is nonetheless entitled to certain writers' credit and royalties whenever he "contribute[d] materially to the authorship of any of the Material" and (2) limits Plaintiff's obligation to contribute to "if and only when request[ed] by the Company, and then [Plaintiff] shall only contribute at his reasonable discretion." (*Id.* ¶ 6.) Contrary to Plaintiff's interpretation, the "request" provision is a condition that, in conjunction with the "reasonable discretion" provision, operates as a ceiling to limit his contributions. That is, Plaintiff's contributions were required only when requested (as opposed to on a constant, ongoing basis) and, as a further limitation, at his reasonable discretion. The request provision does not function to render Paragraph 2 meaningless if no "request" occurs.

Instead, assuming that no such request occurred, when Plaintiff opted to provide his contributions in absence of a request from the Company, he thereby waived the request-related condition, which was in place for his benefit. *See, e.g., ESPN, Inc. v. Off. of Comm'r of Baseball*, 76 F. Supp. 2d 383, 389 (S.D.N.Y. 1999) ("Under the doctrine of waiver, 'a party may, by words or conduct, waive a provision in a contract or eliminate a condition in a contract which was inserted for [its] benefit.").[3]

Plaintiff's argument that he was an independent contractor and able to "compose music on his own time," (Objection at 2), makes no difference. Neither fact somehow transforms Plaintiff's

---

[3] To the extent that it can be argued that the request condition benefitted both the Company and Plaintiff, Plaintiff still waived the request condition once the Company assented to using his contributions in the Material. *Citadel Equity Fund Ltd. v. Aquila, Inc.*, 371 F. Supp. 2d 510, 519–20 (S.D.N.Y. 2005) (noting that, with respect to a provision that benefits both parties, waiver may occur only with the counterparty's assent), *aff'd*, 168 F. App'x 474 (2d Cir. 2006).

10

contributions to the Material during the Term—which fall squarely within the ambit of Paragraph 2—into an exception to the Agreement or an agreement to the contrary. Thus, Plaintiff's objection is overruled.

### B. Declaratory Judgment for Post-Term Songs

Magistrate Judge Cave appropriately determined that Plaintiff is entitled to a declaratory judgment against Defendants with respect to the Post-Term Songs since Plaintiff has established his related copyright infringement claims. *See Intrepidus, LLC v. Bivins*, No. 15 Civ. 7721 (LTS) (HBP), 2017 U.S. Dist. LEXIS 65087, at *11–12, *19 (S.D.N.Y. Apr. 28, 2017) (ordering a declaratory judgment as to copyrighted works); *Mason v. Jamie Music Publ'g Co.*, 658 F. Supp. 2d 571, 586 (S.D.N.Y. 2009) (same). This Court adopts that recommendation in full.

### C. Plaintiff's Accounting, Unjust Enrichment, and Constructive Trust Claims Are Dismissed

Consistent with the Report's recommendation, Plaintiff's remaining claims are dismissed. First, as Plaintiff concedes, his accounting claim "is effectively moot" due to the Defendant's death. (ECF No. 160 ¶ 17 n. 1.) Second, Plaintiff agrees with the Report that his unjust enrichment claim is preempted by the Copyright Act. (*See* Objection at 3 (effectively conceding that this claim is preempted, while also stating, "Plaintiff does not object to the Magistrate's denial of the Unjust Enrichment Claim . . . and did not include [this] claim[] in the Proposed Order of Default Judgment. Docket #159-1.").)

Finally, this Court agrees with the Report that Plaintiff has not demonstrated his entitlement to a constructive trust over the entirety of the Company. A constructive trust claim lies if a plaintiff establishes "(1) a confidential or fiduciary relationship, (2) a promise, expressed or implied, (3) a transfer in reliance thereon, and (4) unjust enrichment." *Lester v. Zimmer*, 542 N.Y.S.2d 855, 856 (App. Div. 1989).

While "the four elements serve only as a guideline, and a constructive trust may still be imposed provided that those factors are substantially present," *Canas v. Oshiro*, 199 N.Y.S.3d 161, 162 (N.Y. App. Div. 2023) (citation omitted), "since a constructive trust is an equitable remedy, it should not be imposed unless it is demonstrated that a legal remedy is inadequate." *Ronis v. Carmine's Broadway Feast, Inc.*, No. 10 Civ. 3355, 2012 U.S. Dist. LEXIS 128529, at *22 (S.D.N.Y. Sept. 7, 2012) (internal quotation and citation omitted).

Plaintiff has not demonstrated how the legal remedies available to him are inadequate. Plaintiff's theory rests upon an oral agreement with Defendants to provide him partial equity in the Company and for Plaintiff to serve as a minority business partner. (*See* Objection at 4.) Though Plaintiff concedes that he was promised partial ownership only, he now seeks imposition of a constructive trust over the whole of the Company "given that the [Company] has since been completely abandoned, [and Plaintiff is] the only person who can assert a claim of any ownership in the [Company]." (Objection at 6.) Put differently, Plaintiff concedes that his request for relief exceeds the very bargained-for exchange he seeks to vindicate.

To the contrary, the relief recommended in the Report sufficiently compensates Plaintiff for his post-Term contributions. Plaintiff will now own the Post-Term Songs—*i.e.*, a minority share of the Company's intellectual property which he contributed to and did not disclaim an interest in. He will also receive money damages to satisfy the past monies owed to him and future revenues that the songs generate. Plaintiff has not established that these remedies are inadequate or that he is entitled to any further relief. Accordingly, Plaintiff's constructive trust claim is dismissed.

## V. PLAINTIFF IS ENTITLED TO CERTAIN DAMAGES, INTEREST, AND COSTS

### A. Copyright Infringement Damages

Consistent with this Court's other findings, an actual damages award must be limited to those flowing from the Post-Term Songs—the songs for which Plaintiff has established a valid copyright infringement claim. The Report appropriately used the following to determine the relevant damages: "the gross CD sales, distribution sales, and licensing and royalties of the Post-Term Songs, as well as a percentage of the revenue [from] the third album, on which the Post-Term Songs appear." (Report at 22.)

However, the Report miscalculated the damages for two Post-Term Songs. It misstated certain revenues for "Soldier's Christmas" and "The Marine's Hymn."[4] Thus, this Court awards the following damages, as recalculated and set forth below.

| Work | CD Baby Sales | Distribution Sales | Licensing and Royalties | Total |
|---|---|---|---|---|
| Amazing America | $4.68 | $805.28 | $4.76 | $814.72 |
| Soldier's Christmas | $3.60 | $1,279.25 | $0.06 | $1,282.91 |
| The Marine's Hymn | $4.50 | $4,529.13 | $2.13 | $4,535.76 |
| God Bless America | $0 | $0 | $0 | $0 |
| American Hero (Red) (Album) | $3,597.61 | $25,575.24 | $330.66 | $9,146.09[5] |
| **TOTAL** | | | | **$15,779.48** |

---

[4] The Report incorrectly concluded that "Soldier's Christmas" earned $10.26 in licensing and royalties—the amount that instead corresponds to line item below "Soldier's Christmas." (*Compare* Report at 23, *with* Decl. of Parlatore, Ex. A ("Revenue Overview"), ECF No. 160-1.) Rather, the song earned $0.06 in licensing and royalties. (Revenue Overview.) As to "The Marine's Hymn," the Report incorrectly substituted the figures for that song with the figures for "Marines' Hymn." (*Compare* Report at 23, *with* Revenue Overview.)

[5] The Post-Term Songs represent approximately 31% of the 13 songs on the album (4/13 = .31). Thus, Plaintiff is entitled to 31% of the album's revenue: $29,503.51 * .31 = $9,146.09.

## B. Pre-Judgment Interest, Post-Judgment Interest, and Costs

With respect to interests and costs, this Court adopts the Report in full. Magistrate Judge Cave appropriately recommended not to award any pre-judgment interest given that "the issue of the permissibility of pre-judgment interest [under the Copyright Act] is unresolved in this Circuit" and that Plaintiff did not specifically request pre-judgment interest or articulate a basis for it. (Report at 23–24); *Tetra Images, LLC v. Grahall Partners, LLC*, No. 19 Civ. 5250 (PMH), 2021 WL 2809566, at *6 (S.D.N.Y. July 6, 2021) (citation omitted). Thus, Plaintiff is not entitled to pre-judgment interest.

Plaintiff is, however, entitled to post-judgment interest in an amount consistent with 28 U.S.C. § 1961, *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008), and $400 in costs for the filing fee he incurred. (*See* Report at 24.) Thus, this Court awards Plaintiff post-judgment interest and $400 in costs.

## VI. CONCLUSION

Magistrate Judge Cave's Report is **ADOPTED** with a modification to the amount of damages. Plaintiff's accounting, unjust enrichment, and constructive trust claims are **DISMISSED** with prejudice.

Plaintiff is hereby declared the owner of copyrights in recordings of "Amazing America" (CR Registration # PA 2-139-608), "Soldier's Christmas" (CR Registration # PAu 3-380-536), "The Marine's Hymn" (CR Registration # 2-139-600), and "God Bless America" (CR Registration # PA 2-139-604).

Plaintiff is awarded the following:

1. Actual damages for copyright infringement under the Copyright Act in the amount of $15,779.48;

2. Post-judgment interest pursuant to 28 U.S.C. § 1961;

3. Costs in the amount of $400.00.

The Clerk of Court is directed to enter final judgment and close this action.

Dated: New York, New York
       September 11, 2024

                                        SO ORDERED.

                                        GEORGE B. DANIELS
                                        United States District Judge